NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0337-14T3

RACHELE LOUISE CASTELLO,

     Plaintiff-Appellant,

v.

ALEXANDER M. WOHLER, M.D.,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

June 20, 2016

APPELLATE DIVISION

Argued May 16, 2016 — Decided June 20, 2016

Before Judges Lihotz, Fasciale and Higbee.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-8850-11.

Lewis Stein argued the cause for appellant
(Nusbaum, Stein, Goldstein, Bronstein &
Kron, P.A., attorneys; Mr. Stein, on the
briefs).

Charles E. Murray, III, argued the cause for
respondent (Farkas & Donohue, L.L.C.,
attorneys; Mr. Murray, on the brief).

Abbott S. Brown argued the cause for amicus
curiae The New Jersey Association for
Justice (Lomurro, Munson, Comer, Brown and
Schottland, L.L.C., attorneys; Mr. Brown, on
the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

In this medical negligence case, plaintiff appeals from two orders dated August 29, 2014: one order granting defendant's motion to dismiss the complaint with prejudice; and one order denying plaintiff's cross-motion to adjourn the trial date and reopen discovery to obtain a new expert.

Defendant is a board-certified cardiothoracic and general surgeon. Plaintiff retained Dr. John E. Edoga, a general surgeon, to prepare an affidavit of merit (AOM) and expert report. Plaintiff's attorney used a copy of Dr. Edoga's curriculum vitae (the original CV) he had in his office and simultaneously served defendant with the complaint, AOM, and original CV.

In his AOM, Dr. Edoga stated he had been in "surgical practice for more than [thirty-five] years[,] which is set forth in my [CV] attached hereto." The original CV attached to the AOM reflected Dr. Edoga was an attending surgeon. Defendant's attorney waived the need for a Ferreira[1] conference and signed a consent order waiving "any objection" to Dr. Edoga's qualifications.

In discovery, plaintiff's counsel produced Dr. Edoga's updated CV (the updated CV) and expert report. The updated CV stated that Dr. Edoga was an attending surgeon since 1976. This

_____

[1]    Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

A-0337-14T3

information was generally consistent with Dr. Edoga's statement in his AOM that he had been in surgical practice for approximately thirty-five years.

Defendant's counsel deposed Dr. Edoga and learned, contrary to the information in the AOM and original and updated CVs, he had been retired for approximately five years before the medical procedure in question was performed. Three months after the deposition and weeks after the January 4, 2014 discovery end date (DED), defendant's counsel moved to bar Dr. Edoga's testimony for failure to comply with the New Jersey Medical Care Access and Responsibility and Patients First Act (PFA), N.J.S.A. 2A:53A-37 to -42, primarily arguing Dr. Edoga was unqualified to testify because he retired from the practice of medicine. The motion was returnable approximately two weeks before trial. The court independently adjourned the trial date to resolve defendant's motion to bar Dr. Edoga's testimony, as well as other related motions.

There is no credible evidence that plaintiff or plaintiff's counsel had knowledge that Dr. Edoga had been retired from the practice of medicine. Had such information been apparent from the AOM and original CV during the 120-day period, the parties would have participated in the Ferreira conference and identified the problem. At that time, plaintiff would have had

ample opportunity to obtain and timely serve a new AOM from a different expert witness.

Under these facts, we agree that the judge properly barred Dr. Edoga's testimony because he had been retired for several years and otherwise failed to meet the statutory requirements of the PFA. However, we conclude dismissal of the complaint with prejudice ignored the purposes of the AOM statute (AMS), N.J.S.A. 2A:53A-26 to -29.[2] In our view, and in light of the strong preference for adjudication on the merits, we conclude that an extension of discovery was warranted.

We hold, in medical negligence cases, where a plaintiff's counsel timely serves an AOM and reasonably relies on the AOM and expert's CV, which erroneously reflects that the witness is actively practicing medicine, and, through no fault of the plaintiff's counsel, the error is first discovered after the expiration of the 120-day deadline imposed under the AMS, exceptional circumstances exist requiring the judge to allow a plaintiff sufficient time to retain a different expert witness who is qualified under the PFA, issue a new AOM, and serve a corresponding expert report. If warranted, the judge may

---

[2] We note that pursuant to N.J.S.A. 2A:53A-27, "the person executing the [AOM] shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in [the PFA]."

include other procedures or requests for relief related to the extension of discovery and service of a new AOM and expert report.

We therefore reverse the orders dismissing the complaint with prejudice and denying plaintiff's cross-motion to reopen discovery. We remand and direct the court to extend discovery, allow plaintiff sufficient time to retain a new expert, address any related discovery issues, and address whether other appropriate relief is warranted.

I.

Plaintiff presented to defendant with difficulty breathing. Defendant examined plaintiff and diagnosed a giant paraesophageal hernia. A computerized tomogram showed that plaintiff's stomach was located in her chest, as opposed to its usual place below the diaphragm. Plaintiff's medical condition warranted immediate attention. In June 2010, with plaintiff's consent, defendant performed surgery to repair the hernia.

Plaintiff experienced post-operative discomfort and her condition worsened. As a result, defendant performed an exploratory laparotomy and repaired a tear to the gastro-esophageal junction. Defendant discharged plaintiff to acute rehabilitation, but readmitted her to the hospital because of further complications. Plaintiff remained there until defendant

granted plaintiff's request to transfer her to a hospital in Pittsburgh.

An esophageal surgeon examined plaintiff at the Pittsburgh hospital, diagnosed an esophageal leak, and performed various medical procedures, including an esophagectomy, thoracotomy, and laparotomy. In October 2010, plaintiff was discharged to a rehabilitation facility. Plaintiff returned home in December 2010, almost six months after defendant performed the hernia repair operation.

In October 2011, plaintiff filed a complaint against defendant alleging that he deviated from accepted standards of medical care and performed the hernia repair negligently, which, purportedly, caused multiple additional medical procedures and substantial pain and suffering.

In addition to serving Dr. Edoga's AOM with the complaint, plaintiff's counsel served defendant with a copy of Dr. Edoga's original CV, which plaintiff's counsel had retrieved from files located in his law firm. The original CV stated Dr. Edoga was an attending surgeon at Morristown Memorial Hospital from "1976 to present," and an assistant clinical professor of surgery from "1985 to present." The information in the original CV corroborated Dr. Edoga's statement in his AOM that he had been in surgical practice for more than thirty-five years.

In December 2011, defendant filed his answer to the complaint, and denied any negligence. The court scheduled the Ferreira conference, which prompted a letter from plaintiff's counsel seeking input as to how defendant intended to proceed. Defendant's counsel initially intended to object to the AOM because "[defendant] is a cardiac and thoracic surgeon[,] and given the fact that this matter would fall within that specialty or sub-specialty, Dr. Edoga's qualifications do not suffice under the [PFA]."

Plaintiff's counsel responded by advising that general surgeons, like Dr. Edoga, also perform laparoscopic repairs of paraesophageal hernias, especially because the surgery here was in the abdomen. He referred to the original CV, which also listed Dr. Edoga's 1997 publication pertaining to laparoscopic repair of paraesophageal hernias. Defendant's counsel wrote to plaintiff's counsel, stating "[m]y client advises that some hospitals do permit general surgeons to perform this procedure."

Defendant's counsel withdrew the objection, waived the need for the Ferreira conference, and confirmed in a March 14, 2012 consent order that defendant waived "any objection" to the adequacy of the AOM. Based on the contents of the AOM and original CV, the parties had no reason to believe that Dr. Edoga had retired from the practice of medicine, and therefore they

did not pursue the Ferreira conference to resolve whether the retirement rendered Dr. Edoga unqualified pursuant to the requirements enunciated in case law and the PFA. Consequently, plaintiff's counsel continued using Dr. Edoga as plaintiff's expert.

Over the next three years, the parties engaged in extensive discovery. They propounded interrogatories, produced document demands, served subpoenas, and deposed several fact witnesses. Experts on both sides then reviewed the information obtained during the pretrial discovery.

Plaintiff's counsel served Dr. Edoga's expert report, dated May 21, 2013, well within the DED. Dr. Edoga opined that defendant's surgical technique caused esophageal perforations, which defendant purportedly missed, misinterpreted, or ignored; defendant used covered stents in a manner well below accepted standards of care; and defendant failed to properly monitor plaintiff and seek timely consultations with other doctors. In his expert report, Dr. Edoga stated that he had published medical journal articles "on this subject," he had produced instructional videos and trained surgical residents and attending surgeons "to safely perform the surgery in question," and he had given lectures "dealing with the subject matter at hand."

Along with Dr. Edoga's expert report, plaintiff's counsel served defendant's counsel with a copy of the updated CV, which repeated that Dr. Edoga was an attending surgeon at Morristown Memorial Hospital from "1976 to present," and an assistant clinical professor of surgery from "1985 to present." The updated CV listed Dr. Edoga as the president and chief operating officer of a company from "2002 to present" and referenced his teaching assignments, including training in surgical technologies and techniques.

Defendant's counsel deposed Dr. Edoga on November 1, 2013. Dr. Edoga's supplemental CV (the supplemental CV) was produced and marked as an exhibit during the deposition. The supplemental CV, like the original CV and updated CV, stated that Dr. Edoga was an attending surgeon at Morristown Memorial Hospital from "1976 to present," and assistant clinical professor of surgery from "1985 to present."

In response to questions during his deposition, Dr. Edoga testified he was affiliated with Columbia University as an assistant clinical professor, where he "gave a couple lectures" in 2009 and 2010. He also stated he was on the attending staff at Morristown Memorial Hospital, where he had privileges as an emeritus professor. Dr. Edoga admitted, however, that he retired from the active practice of medicine in 2005 and

conceded he volunteered to teach two or three hours per week, which was not with an accredited medical school. Upon retirement, Dr. Edoga pursued medical device inventions and development, which was consistent with the additional reference to training in the updated CV.

Defendant's counsel did not move to disqualify Dr. Edoga before the expiration of the DED. Rather, in January 2014, approximately three months after Dr. Edoga's deposition and well after the expiration of the DED, defendant's counsel filed a motion to bar Dr. Edoga's testimony. The motion was returnable approximately seventeen days before the first trial date. Defendant's counsel argued in part that Dr. Edoga failed to satisfy the requirements of the PFA because he was not actively practicing surgery at the time of the alleged malpractice, a fact that defendant's counsel urged was not clear until after Dr. Edoga's deposition.

Plaintiff opposed the motion, in part, by arguing that the court should waive the "same specialty or subspecialty" requirement under the PFA, N.J.S.A. 2A:53A-41(c). Plaintiff maintained there existed a limited availability of surgeons with defendant's specialty who have surgically repaired giant paraesophageal hernias. Alternatively, plaintiff's counsel requested, in the event the judge was inclined to bar Dr.

Edoga's testimony, a reasonable time in which to obtain another expert.

On March 17, 2014, the court granted defendant's motion and entered an order barring the testimony of Dr. Edoga. The court did not fully consider the merits of plaintiff's waiver argument because plaintiff failed to formally file a motion seeking waiver from compliance with the PFA, pursuant to N.J.S.A. 2A:53A-41(c). Rather, the judge disqualified Dr. Edoga from acting as an expert witness, concluding that plaintiff failed to satisfy the requirements of N.J.S.A. 2A:53A-41(a)(1) or (2), which sets forth the requirements for an expert's testimony under the PFA.

Discussing whether defendant's objection was timely, the judge concluded that defendant's counsel was not placed on "adequate notice of Dr. Edoga's qualifications." She found Dr. Edoga's original CV "misrepresented his current status and qualifications at the time it was served." As a result, the judge determined defendant's counsel was unable to object to Dr. Edoga's qualifications until after the deposition. Although the court acknowledged plaintiff's equitable argument and "concerns . . . in light of the timing of th[e] [motion to bar Dr. Edoga]," and although she recognized the "apparent prejudice plaintiff will suffer . . . on the eve of the impending trial

11

date," the court did not grant plaintiff's request for a reasonable amount of time to obtain another expert. The court adjourned the trial date, however, from March 2014 to April 28, 2014.

Because plaintiff was without an expert to support her allegations of medical negligence, defendant's counsel filed a motion for summary judgment, returnable April 25, 2014. While that motion was pending, plaintiff moved for reconsideration of the March 17, 2014 order barring Dr. Edoga's testimony and sought to adjourn the April 28, 2014 trial date and reopen discovery. The court denied defendant's motion for summary judgment without prejudice pending resolution of plaintiff's motion for reconsideration. The court also independently adjourned the trial date until October 14, 2014. On June 25, 2014, the court denied plaintiff's motion for reconsideration.

Defendant then filed his "motion to dismiss" plaintiff's complaint for failure to comply with the PFA. Plaintiff filed a cross-motion to reopen discovery, adjourn the trial date, and permit plaintiff an opportunity to provide a new expert.

In plaintiff's motion to reopen discovery to obtain a new expert, plaintiff's counsel addressed the court's finding that Dr. Edoga's original CV was misleading on its face. He reiterated

> [t]he [d]efendant is quick to attribute an inference of deliberate misrepresentation on Dr. Edoga's qualification by virtue of the [CVs] presented. As indicated [previously,] the CVs were delivered . . . not by virtue of any effort by Dr. Edoga to misrepresent his status — much less an effort by the [p]laintiff to misrepresent [Dr. Edoga's] status.[3]

The judge concluded that plaintiff failed to demonstrate exceptional circumstances to allow extended discovery, found that defendant's counsel moved to bar Dr. Edoga's testimony "immediately and expeditiously" after taking his deposition, and determined defendant would be prejudiced as a result of prolonged litigation. On August 29, 2014, the judge entered the orders under review.

On appeal, plaintiff argues that Dr. Edoga satisfied the requirements of N.J.S.A. 2A:53A-41(a)(1) and (2); the judge erred in not applying N.J.S.A. 2A:53A-41(c); and the judge abused her discretion by failing to adjourn the trial date, extend discovery, and allow plaintiff an opportunity to retain a new expert.

---

[3]   Although the judge focused on the original CV, the record establishes that the contents of all the CVs and the AOM erroneously suggested Dr. Edoga was actively practicing medicine. On this record, there are no credible facts to suggest plaintiff's counsel knew before the deposition that Dr. Edoga had been retired for approximately five years before the procedure in question.

In June 2015, we granted The New Jersey Association for Justice (NJAJ) amicus curiae status and permission to participate in oral argument. NJAJ challenges the constitutionality of the PFA, argues that the PFA was an improper exercise of legislative authority, contends that Dr. Edoga was qualified to testify, and, alternatively, asserts the judge abused her discretion by failing to give plaintiff time to replace Dr. Edoga.

## II.

We begin by addressing the merits of the order dismissing the complaint with prejudice. The court granted defendant's motion to dismiss based on plaintiff's failure to comply with the PFA. We afford this decision no deference, reviewing all decisions on motions to dismiss de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014), certif. denied, 221 N.J. 492 (2015). Our focus here is on whether Dr. Edoga satisfied the statutory and case law requirements to testify as an expert.

Plaintiff contends that Dr. Edoga was qualified to testify as an expert because he satisfied the PFA, particularly the additional statutory requirements enumerated in N.J.S.A. 2A:53A-41(a)(1) and (2). In the alternative, plaintiff argues the judge erred by refusing to waive the expert qualification

requirements imposed by the PFA, as permitted by <u>N.J.S.A.</u> 2A:53A-41(c). We address these contentions in turn.

A.

The PFA establishes certain qualifications that expert witnesses in medical malpractice actions must possess. <u>Nicholas v. Mynster</u>, 213 <u>N.J.</u> 463, 479 (2013). <u>N.J.S.A.</u> 2A:53A-41 provides, in pertinent part:

> In an action alleging medical malpractice, <u>a person shall not give expert testimony or execute an affidavit</u> pursuant to the provisions of P.L. 1995, c. 139 (C. 2A:53A-26 et seq.) on the appropriate standard of practice or care <u>unless the person is licensed</u> as a physician or other health care professional in the United States <u>and meets the following criteria</u>:
>
> > a. <u>If</u> the <u>party</u> against whom or on whose behalf the testimony <u>is</u> offered is <u>a specialist or subspecialist</u> recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, <u>the person providing the testimony shall have specialized</u> <u>at the time of the occurrence</u> that is the basis for the action in <u>the same specialty or subspecialty</u>, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party against whom or on

whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall be:

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties

or the American Osteopathic Association, <u>the active clinical practice of that specialty or subspecialty</u> recognized by the American Board of Medical Specialties or the American Osteopathic Association; <u>or</u>

(b) the <u>instruction of students</u> in an <u>accredited medical school, other accredited health professional school or accredited residency or clinical research program</u> in the same health care profession in which the defendant is licensed, <u>and</u>, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(c) both.

[(Emphasis added).]

In <u>Nicholas</u>, the Court provided critical guidance for the bench and practitioners when applying these provisions. <u>Supra</u>, 213 <u>N.J.</u> at 479-88. Specifically, the Court explained <u>N.J.S.A.</u> 2A:53A-41(a) imposes certain preliminary qualifications of an

expert who seeks to testify against a defendant physician who practices a specialty, but who is not otherwise board certified. Nicholas, supra, 213 N.J. at 481-82. Experts must satisfy these minimum requirements as a prerequisite to presenting testimony. Moreover, if a defendant is board certified, N.J.S.A. 2A:53A-41(a) requires that the testifying expert satisfy additional qualifications set forth in subsections (a)(1) or (a)(2). Id. at 482.

In her argument that the judge erred by barring Dr. Edoga from testifying, plaintiff focuses primarily on the added qualifications enumerated in N.J.S.A. 2A:53A-41(a)(1) (requiring the expert be credentialed) and (a)(2)(b) (generally requiring the expert devote a majority of his/her professional time towards instruction of students in an accredited school). Certainly, Dr. Edoga needed to meet the additional qualifications of (a)(1) or (a)(2) because defendant was board certified. But before we reach whether Dr. Edoga satisfied the added statutory qualifications, we address whether he met the preliminary qualifications mandated by N.J.S.A. 2A:53A-41(a).

(i)

As to the preliminary qualification of specialization, the expert "shall have specialized [in the same specialty as a defendant physician] at the time of the occurrence." N.J.S.A.

2A:53A-41(a). Moreover, "[w]hen a physician is a specialist and the basis of the malpractice action 'involves' the physician's specialty, the challenging expert must practice in the same specialty." Nicholas, supra, 213 N.J. at 481-82 (citing Buck v. Henry, 207 N.J. 377, 391 (2011)) (emphasis added).

It is undisputed that Dr. Edoga retired from the practice of medicine in 2005, approximately five years before defendant performed the hernia repair operation. Dr. Edoga testified that the last time he performed a paraesophageal hernia repair was in 2005. He also testified that the last time he was involved in repairing a tear of the esophagus was in 2005. In his marketing material, Dr. Edoga advertised that he was "retired from the active practice of surgery [as early as] November of 2004 and now function[ed] as the Chief Executive Officer of a start-up surgical device company."

The Court has stated unequivocally that a plaintiff "cannot establish the standard of care through an expert who does not practice in the same medical specialties as [a] defendant physician[]." Nicholas, supra, 213 N.J. at 468. As a result, Dr. Edoga did not meet the minimum requirement mandated by N.J.S.A. 2A:53A-41(a).

Because Dr. Edoga did not actively practice medicine "at the time of the occurrence" in the same specialty as defendant, we need not reach whether he met the added qualifications of (a)(1) or (a)(2) under the PFA. However, we observe that Dr. Edoga also failed to meet the additional requirements contained in (a)(1) or (a)(2). The additional requirements under N.J.S.A. 2A:53A-41(a)(1) and (a)(2) apply when the defendant physician is board certified and the course of treatment in dispute involves that specialty. In such a case, the expert must meet one of two criteria.

First, under N.J.S.A. 2A:53A-41(a)(1), an expert may be "a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action." This prong is designed to act as a substitute for board certification. Specifically, although the expert may not be board certified in the area in question, he or she may be credentialed by his or her hospital to treat patients for the medical condition at issue. Nicholas, supra, 213 N.J. at 482. Importantly, "[t]he hospital-credentialing provision is not an alternative to the same-specialty requirement." Ibid. However, a necessary precursor to being

credentialed by a hospital is that the expert must be actively practicing and treating the condition at issue.

Here, Dr. Edoga was not credentialed by a hospital to treat the condition at issue when plaintiff's claim arose. At the time defendant performed the hernia surgery in 2010, Dr. Edoga was not privileged to "treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action." N.J.S.A. 2A:53A-41(a)(1). Years before the procedure, Dr. Edoga failed to maintain his medical malpractice insurance and forfeited his privileges at Morristown Memorial Hospital. As a result, Dr. Edoga fails to satisfy the added requirement of (a)(1).

Second, N.J.S.A. 2A:53A-41(a)(2) requires the expert to be a board certified specialist or subspecialist in the same specialty as the defendant physician, and during the year immediately prior to the occurrence, have devoted the majority of his or her professional time to active practice in that same specialty or subspecialty, or the instruction of students in an accredited medical school, also in the same specialty or subspecialty, or both.

The undisputed evidence shows Dr. Edoga did not, "during the year immediately preceding the date of the occurrence," devote the majority of his professional time to either active

clinical practice or the instruction of students in a statutorily defined accredited institution. Although Dr. Edoga stated that he "teaches," he admitted he was not doing so in a "teaching position . . . or professor[ship]," and he testified that his instruction amounted to two or three hours per week. As a result, Dr. Edoga also failed to satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2).

B.

We reject plaintiff's contention that the judge erred by refusing to waive the expert qualification requirements imposed by the PFA. Under certain circumstances, a court may waive compliance with the PFA pursuant to N.J.S.A. 2A:53A-41(c), which provides:

> A court may waive the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association and board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.
>
> [(Emphasis added).]

A party seeking a waiver must file a motion for that relief, which plaintiff failed to do. Instead, plaintiff's counsel informally asked the court to waive the requirements pursuant to subsection (c). Even though no motion was filed, we consider the merits of plaintiff's contentions.

The statutory obligation is to demonstrate good faith efforts to "identify an expert in the same specialty or subspecialty." Ibid. There is no evidence that plaintiff was unable to locate an actively practicing cardiothoracic or general surgeon to review the merits of plaintiff's medical malpractice allegations. Plaintiff argues counsel was unable to locate surgeons who have performed the exact procedure defendant performed in 2010, but the obligation is only to show good faith efforts to identify an expert in the same specialty or subspecialty, which plaintiff failed to do.

Even if plaintiff made the requisite showing of good faith, Dr. Edoga's training, experience, and knowledge are not derived from his "active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine." Ibid. As a result, we see no basis for a waiver under section (c).

III.

We now turn to the order denying plaintiff's cross-motion to adjourn the April 28, 2014 trial date, reopen limited discovery, and allow plaintiff an opportunity to obtain a new expert. The request to adjourn the trial date is not an issue because the court had independently adjourned the trial from April 2014 to October 2014. We focus on the dismissal of the complaint with prejudice and whether the court should have permitted plaintiff to reopen discovery and obtain a new expert.

We conclude that denying plaintiff's cross-motion, which led to the dismissal of the complaint with prejudice, substantially ignored the purposes of the AMS. We reach this conclusion reemphasizing the important reasons for a Ferreira conference and the strong preference for adjudication of disputes on the merits. Under the unique facts of this case, we conclude that exceptional circumstances existed to extend limited discovery.

A.

The dual purpose of the AMS is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira, supra, 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)); see also Buck,

24                                                              A-0337-14T3

supra, 207 N.J. at 383 (explaining "[t]he purpose of the [AMS] is to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones"). Considering the facts of the case before us, dismissing plaintiff's complaint with prejudice would not serve these purposes. On this record, there is no credible evidence to suggest that plaintiff's complaint is frivolous.

Plaintiff's counsel attempted in good faith to comply with the PFA and N.J.S.A. 2A:53A-27, which provides, in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

In medical malpractice cases, the AMS requires the affiant to satisfy the requirements of the PFA, pursuant to N.J.S.A. 2A:53A-27, which further provides in relevant part that

25

> [i]n the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L. 2004, c. 17 (C. 2A:53A-41).

Here, although the judge concluded that the original CV was misleading on its face, she did not address the root of the problem. The record reflects plaintiff's counsel produced the original CV in good faith and there is no reason to believe from a review of the original CV or AOM that plaintiff or plaintiff's counsel knew Dr. Edoga had retired from the active practice of medicine. Moreover, this is not a situation that amounted to carelessness or inadvertence by plaintiff's counsel in using the original CV, because the contents of the AOM and updated and supplemental CVs also suggest that Dr. Edoga was actively practicing medicine.

### B.

In malpractice cases, the qualifications of a plaintiff's expert are expected to be addressed early in the litigation. There exists a well-settled procedure to address potential problems with compliance with the AMS. In Buck, the Court reaffirmed the Ferreira requirement for courts to conduct a case management conference within "ninety days of the service of an answer in all malpractice actions." Supra, 207 N.J. at 394.

The Court further noted that "[t]he painful experience of our [AOM] jurisprudence reveals the compelling need for such conferences at an early stage before problems arise." <u>Ibid.</u> (first alteration in original) (quoting <u>Ferreira</u>, <u>supra</u>, 178 <u>N.J.</u> at 155). A <u>Ferreira</u> conference serves to avoid inadvertent and technical errors in timely service of the affidavit. <u>See</u> <u>Ferreira</u>, <u>supra</u>, 178 <u>N.J.</u> at 154-55. It also "require[s] [a defendant] to advise the court whether he [or she] has any objections to the adequacy of the affidavit." <u>Id.</u> at 155. Ultimately, the conference serves to resolve potential discovery issues — including compliance with the AMS — before they result in "sideshows" of dueling motions. <u>Id.</u> at 154-55.

Here, defendant's counsel understandably waived the <u>Ferreira</u> conference in part by relying on the AOM, in which Dr. Edoga stated he had been in surgical practice for thirty-five years, and the original CV, which indicated Dr. Edoga was an attending surgeon at Morristown Memorial Hospital from "1976 to present," and an assistant clinical professor of surgery from "1985 to present." Counsel's only concern was whether Dr. Edoga shared the same specialty under the PFA to issue the AOM and render expert opinion testimony against defendant.

Had defendant's counsel known that Dr. Edoga had been retired five years before the alleged malpractice, defendant's

counsel would have proceeded with the <u>Ferreira</u> conference challenging Dr. Edoga's qualifications under the AMS and PFA. Certainly, had the <u>Ferreira</u> conference occurred, plaintiff would have had the opportunity to comply with the AMS and PFA by serving an AOM from a different expert witness before the expiration of the 120—day deadline. Through no fault of either counsel, Dr. Edoga's retirement was not known during the 120-day deadline.

In general, to temper an inflexible application of the AMS, the Supreme Court has carved out exceptions for extraordinary circumstances, <u>Cornblatt v. Barow</u>, 153 <u>N.J.</u> 218, 246-47 (1998); <u>Tischler v. Watts</u>, 177 <u>N.J.</u> 243, 246-47 (2003); for substantial compliance with the statutory requirements, <u>Fink v. Thompson</u>, 167 <u>N.J.</u> 551, 564-65 (2001); <u>Galik v. Clara Maass Med. Ctr.</u>, 167 <u>N.J.</u> 341, 357 (2001); for equitable estoppel and laches, <u>Knorr v. Smeal</u>, 178 <u>N.J.</u> 169, 178-81 (2003); and for technical deficiencies in the contents or service of the affidavit that could have been cured within the statutory time limit, <u>Ferreira</u>, <u>supra</u>, 178 <u>N.J.</u> at 154-55. In the context of the AMS, these equitable doctrines are not directly implicated on this appeal because the question is not whether to permit the use of Dr. Edoga's AOM, but rather, whether to extend discovery so plaintiff can retain a new expert.

To illustrate this point, we turn to defendant's reliance on Medina v. Pitta, 442 N.J. Super. 1 (App. Div.), certif. denied, 223 N.J. 555 (2015). Defendant argues that the doctrines of substantial compliance and extraordinary circumstances are inapplicable. Defendant contends that once the court barred Dr. Edoga's testimony, he was entitled to summary judgment. Based on our reasoning in Medina, he maintains that dismissal with prejudice is appropriate.

Defendant's reliance on Medina is misplaced. There the parties were only concerned with whether the plaintiff's expert satisfied the requirements under the PFA; here, the focus is on the unintended consequences that flowed from plaintiff's counsel's reasonable reliance on the AOM and original CV, which erroneously reflected that Dr. Edoga had been practicing medicine, not whether these equitable doctrines allowed the continued use of Dr. Edoga's AOM and expert opinions. The focus is on whether exceptional circumstances existed to extend discovery, not to continue with Dr. Edoga as plaintiff's expert.

The facts in Medina are distinguishable. There, before service of the AOM and expert's CV, the expert told the plaintiff's attorney he was retired and asked if that would be a problem. Id. at 14. The plaintiff's attorney replied he would "look into it," but he did not think it would be a problem.

_Ibid._   Here, there is no evidence in the record to show that plaintiff's counsel had any reason to know, when he served the original CV with the AOM and complaint, or even service of the updated CV with Dr. Edoga's expert report, that Dr. Edoga retired five years before the alleged malpractice.   On the contrary, Dr. Edoga stated in his AOM he had been involved in surgical practice for roughly thirty-five years.

Additionally, in _Medina_, the expert gave deposition testimony that he had retired, but unlike here, the plaintiff in _Medina_ did not file a motion to obtain a new expert or extend the DED.   _Id._ at 12-13.   Instead, in opposition to the defendant's motion for summary judgment, the plaintiff maintained his expert satisfied the PFA.   _Id._ at 13.   The court disagreed and granted summary judgment to the defendant.   _Ibid._ On reconsideration, the plaintiff reasserted his expert satisfied the PFA, and for the first time argued that the doctrines of substantial compliance and extraordinary circumstances warranted a dismissal without prejudice.   _Id._ at 14.

We agree with defendant's contention that under the facts of _Medina_, the equitable doctrines of substantial compliance and extraordinary circumstances were unavailable.   In _Medina_, we rejected the plaintiff's contention that the dismissal should

have been without prejudice. Id. at 20-25. We determined that the doctrine of substantial compliance "may be invoked when dismissal is sought based upon [technical] deficiencies in an AOM." Id. at 25. The doctrine is "not intended to shield a plaintiff from the dismissal of a claim that is substantively defective." Ibid. We pointed out that application of the doctrine would erode our summary judgment jurisprudence and eviscerate the remedial purpose of the PFA, to provide stringent requirements for expert qualification. Ibid. Similarly, we stated that a summary judgment analysis does not allow application of the doctrine of extraordinary circumstances. Ibid.

Here, however, the question is not whether the doctrines of substantial compliance and extraordinary circumstances warrant continued use of Dr. Edoga's testimony; rather, the issue is whether exceptional circumstances exist allowing for an extension of discovery permitting plaintiff time to retain a different expert witness because, unbeknownst to plaintiff and her attorney, the parties learned after the expiration of the 120-day deadline that the references to Dr. Edoga's active medical practice in the AOM and original CV were inaccurate. Therefore, Medina's holding does not govern our review.

C.

Our review of the trial judge's decision not to extend discovery is deferential. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div.) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)), certif. denied, 185 N.J. 296 (2005).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). We respectfully conclude such an abuse of discretion occurred here.

"The right of a trial court to manage the orderly progression of cases before it has been recognized as inherent in its function." Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 488 (App. Div.), certif. denied, 165 N.J. 607 (2000). Rule 4:24-1(c) provides in pertinent part that "[n]o extension of the discovery period may be permitted after

an arbitration or trial date is fixed, unless exceptional circumstances are shown."  The moving party must satisfy four inquiries to extend discovery based on exceptional circumstances:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Rivers, supra, 378 N.J. Super. at 79.]

As to the first prong, plaintiff's counsel diligently pursued compliance with the AMS and the PFA.  Plaintiff's counsel produced the AOM timely, defendant's counsel waived the Ferreira conference and "any objection" to Dr. Edoga, and plaintiff's counsel produced Dr. Edoga's expert report and updated CV timely.  Plaintiff's counsel did not know about any objection to Dr. Edoga's qualifications until after the DED expired.

As to the second prong, the additional discovery sought is essential to plaintiff's case.  Without an expert, plaintiff's case will be dismissed, even though there is no credible evidence to suggest that plaintiff's claim is frivolous.

33

As to the third prong, plaintiff's counsel has a reasonable explanation for not requesting an extension within the DED. Defendant's counsel did not inform plaintiff's counsel at Dr. Edoga's deposition that he would be moving to bar the testimony of Dr. Edoga. Had that occurred, plaintiff's counsel would have had sufficient time to request an extension of time in which to retain a new expert. And because a trial date had not yet been fixed at that point, the standard would have been one of good cause rather than exceptional circumstances.

As to the fourth prong, the circumstances were beyond plaintiff's control. There was no need to request an extension of discovery before the expiration of the DED, even after Dr. Edoga's deposition, because there was no objection to Dr. Edoga's qualifications at that point. It was not until after the DED expired that plaintiff's counsel first learned that defendant would be seeking to bar Dr. Edoga's testimony. Certainly, it was reasonable for plaintiff's counsel to rely on the contents of the AOM and CVs.

We disagree with the finding that defendant's counsel moved to bar Dr. Edoga's testimony "immediately and expeditiously" after taking his deposition. The deposition occurred on November 1, 2013, but the motion was not filed until January 29, 2014. Given the fact that defendant signed the consent order in

34

March 2012, waiving "any objection[s]" to Dr. Edoga's qualifications, and in light of the fact that defendant did not object before the DED expired, plaintiff's counsel had no reason to retain a new expert until defendant filed the motion to bar, returnable on the eve of trial. Dismissing plaintiff's complaint with prejudice would encourage procedural gamesmanship and does not further the purposes of imposing enhanced qualification requirements for expert witnesses.[4] Ferreira, supra, 178 N.J. at 154.

### D.

It is well settled that because "dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will erase the prejudice suffered by the non-delinquent party." Irani v. K-Mart Corp., 281 N.J. Super. 383, 387 (App. Div. 1995) (quoting Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 345 (1984)). "Certainly, there has been no showing of prejudice to [defendant] that would outweigh the strong preference for adjudication on the merits rather than final disposition for procedural reasons, or would warrant visiting on the innocent client[] an error of [her] attorney." Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 207 (App. Div.

---

[4] The judge did not find that defendant's counsel engaged in procedural gamesmanship.

2000) (citations omitted).  We conclude "[t]his is not a case of a plaintiff sleeping on [her] rights and ignoring statutorily imposed deadlines."  <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u> at 395.  "Rather, this is a case of a plaintiff who has made good-faith attempts to satisfy the statute."  <u>Ibid.</u>

IV.

Finally, both plaintiff and the NJAJ argue that the PFA violates Article VI, Section 2, Paragraph 3 of the New Jersey Constitution, which states, in part:

> The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts.

Our courts have uniformly recognized the constitutionality of the PFA.  <u>See e.g.</u>, <u>Ferreira</u>, <u>supra</u>, 178 <u>N.J.</u> at 149 n.1; <u>Medina</u>, <u>supra</u>, 442 <u>N.J. Super.</u> at 27.  Moreover, to the extent that NJAJ also argues that the PFA "was an improper exercise of legislative authority" that "runs afoul of the established methods for creating new rules of evidence," we conclude this argument is without sufficient merit to warrant extended discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).  <u>See</u> <u>N.J. State Bar Ass'n v. State</u>, 387 <u>N.J. Super.</u> 24, 50 (App. Div.) (reaffirming the constitutionality of the PFA and explaining it does not unconstitutionally infringe on the rules of evidence), <u>certif. denied</u>, 188 <u>N.J.</u> 491 (2006).

We reverse the order dismissing the complaint with prejudice; reverse the order denying plaintiff's cross-motion to adjourn the trial date and reopen discovery; and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Moreover, the judge has the discretion on remand to impose, if warranted, other appropriate relief.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION