**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1540-23

STACY SOVELOVE,
INDIVIDUALLY AND AS
EXECUTOR OF THE ESTATE
OF MARC S. SOVELOVE,
DECEASED,

     Plaintiff-Appellant,

v.

DR. MICHAEL SHIRAZI, M.D.,
DR. AMARPAL K. PUREWAL,
M.D., DR. SCOTT SUNDICK, M.D.,
DR. HERNAN SANCHEZ-TREJO,
M.D., DR. ASIM KHAN, M.D., DR.
SANFORD T. REIKES, M.D.,
DR. JEFFREY R. BLITSTEIN, M.D.,
OVERLOOK MEDICAL CENTER,
AND ATLANTIC HEALTH SYSTEM,

     Defendants,

and

DR. KEREN BAKAL, M.D.,

     Defendant-Respondent.

_____

Argued March 26, 2025 – Decided June 17, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1635-19.

Gary Wm. Moylen argued the cause for appellant.

Robert E. Spitzer argued the cause for respondent (MacNeill, O'Neill, Riveles and Spitzer, LLC, attorneys; Lauren K. O'Neill, of counsel; Robert E. Spitzer, on the brief).

PER CURIAM

Plaintiff Stacy Sovelove, individually and as Executor of the Estate of Marc S. Sovelove, appeals from a trial court order dismissing with prejudice her complaint against defendant Dr. Keren Bakal for failure to provide a compliant affidavit of merit (AOM) as required by N.J.S.A. § 2A:53A-27 (AOM Statute). After our review of the record and application of the pertinent legal principles, we conclude plaintiff's AOM failed to comply with the AOM Statute and therefore, we affirm.

I.

The following pertinent facts adduced from the record are substantially undisputed. On June 1, 2018, Marc Sovelove (decedent) underwent an elective right kidney biopsy at Overlook Hospital in Summit that had been ordered by

2

his nephrologist, defendant Dr. Sanford T. Reikes, M.D. The procedure was performed by defendant Dr. Michael Shirazi, an interventional radiologist, where a computed tomography (CT) scan is used to guide a needle into the kidney to obtain small tissue samples. The procedure is considered to be minimally invasive and is an alternative to an open surgical procedure, has a faster recovery time, and avoids general anesthesia.

Shortly after the biopsy was completed, decedent complained of right-side lower quadrant abdominal pain, became very pale, and was profusely sweating. Suspecting an internal bleed, Dr. Shirazi ordered a CT scan of the right kidney which showed that the kidney was actively bleeding. The bleeding was diagnosed as a large retroperitoneal bleed[1] which plaintiff alleged was caused by the biopsy procedure.

Dr. Shirazi sent decedent to the Emergency Department at Overlook Hospital to treat the bleeding. During that same day, decedent was seen and examined by other physicians, including defendant, a pulmonologist and critical care specialist. Although all of these physicians examined decedent that afternoon, plaintiff alleges none of them made any effort to intervene to stop the

---

[1] A retroperitoneal bleed is a hemorrhage occurring in the retroperitoneal space, the area behind the peritoneum, the membrane lining the abdominal cavity. https://acsearch.acr.org/docs/3158181/Narrative/ (last visited June 2, 2025).

A-1540-23

internal bleeding. Plaintiff further alleges that, although blood transfusions were ordered, decedent received no blood transfusions. Plaintiff alleges almost five hours after the retroperitoneal bleed was diagnosed by CT scan, another interventional radiologist took decedent to an operating suite to perform an embolization to stop the internal bleeding. As he was being prepared for this procedure, decedent suddenly became pulseless, went into cardiac arrest and died.

Plaintiff's amended complaint identifies defendant as a physician specializing in critical care and pulmonology. The complaint alleges that following the right kidney biopsy with resulting puncture, defendant was required to "properly manage [decedent's] care to arrange for appropriate consultations and to perform necessary surgical procedures to ensure that that patient did not bleed to death."

Plaintiff claimed that defendant along with the other named defendants were "negligent and deviated from the accepted standards of medical practice in the community in their care and treatment of [p]laintiff's [d]ecedent, [] which negligence and deviations were the proximate cause of his death."

Defendant's answer to the amended complaint denied all claims of negligence. Defendant asserted she "is a licensed physician practicing medicine

4

in the specialty of pulmonology and critical care medicine" and that the care and treatment provided to plaintiff by defendant was within those specialties. Finally, defendant's answer demanded an AOM "pursuant to N.J.S.A. 2A:53A-27[]." Thereafter, plaintiff served an AOM on all defendants prepared by Paul S. Skudder, M.D., which certifies that the care and treatment provided by defendant, as well as Dr. Scott Sundick, Dr. Hernan Sanchez-Trejo and Dr. Asim Khan, "fell outside acceptable professional standards and/or treatment practices."

The parties agree that Dr. Skudder holds board certifications in general surgery, vascular surgery and surgical critical care, which are the distinct medical disciplines in which he specializes. The American Board of Surgery (ABS) issued Dr. Skudder's board certifications. After graduating from medical school, Dr. Skudder completed a residency in surgery and a vascular fellowship. Defendant holds board certifications in internal medicine, pulmonary medicine and critical care medicine, which were issued by the American Board of Internal Medicine (ABIM). At the time defendant provided care and treatment to plaintiff, she asserts she was practicing in the specialties of pulmonology and critical care. Following medical school, she completed a residency in internal medicine and a pulmonary and critical care fellowship.

Because defendant believed that she and Dr. Skudder did not share the same medical specialty, held different board certifications, and did not meet the same "kind-for-kind" requirement, defendant notified plaintiff that she objected to Dr. Skudder's AOM. Thereafter, defendant filed a motion to dismiss plaintiff's complaint for failure to provide an appropriate AOM required by the AOM Statute.

In January 2020, the court held a Ferreira[2] Conference. At the conference defendant confirmed her objection to Dr. Skudder's AOM and that she had filed a motion challenging its sufficiency. Following the conference, plaintiff filed opposition to defendant's motion, but did not seek a waiver of the AOM requirement and did not request additional time to serve an additional or amended AOM.

On June 24, in an oral decision, the court granted defendant's motion to dismiss plaintiff's complaint with prejudice. The court quoted the AOM Statute concerning the requirements that an expert must meet to execute an AOM. The court found it was undisputed that defendant specialized in pulmonology with a subspecialty in critical care. The court also stated plaintiff's argument was that "the [AOM] statute does not require that the affiant had the identical credentials

---

[2] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

A-1540-23

as the defendant physician. Instead, plaintiff asserts that the affiant need only have the same board certifications as the defendant physician and that medical treatment involv[ing] that specialty." The court further stated plaintiff also argued that despite defendant's board certification being in critical care medicine and Dr. Skudder's specialty being in surgical critical care, the doctors practiced within the same specialty.

In rejecting plaintiff's argument, the court cited to and relied on our Supreme Court's seminal holding in Nicholas v. Mynster, 213 N.J. 463, 482-483 (2013), wherein it addressed the credentialing provision of the AOM Statute. Quoting Nicholas, the trial court found "'[w]hen a physician is a specialist and the basis of the malpractice involves the physician's specialty, the challenging expert must practice in the same specialty.'" Id. at 481-482.

The court then engaged in an analysis of whether (1) defendant was a specialist or a general practitioner; and (2) whether the treatment that is the basis of the malpractice action involves that specialty. Under this analysis, the court found Dr. Skudder could not serve as a qualified affiant concerning the standard of care for defendant. As the court noted, it was undisputed that defendant is a specialist and that the treatment at issue involved her practice as an internist and her subspecialty of critical care medicine. The court also confirmed that

7

"[a]lthough both [defendant] and Dr. Skudder possess subspecialties relating to critical care, those subspecialties were not the same." The court added that the American Board of Medical Specialties (ABMS) "recognizes distinct subspecialties for critical care medicine [as] it relates to internists and critical care surgery [as] it relates to the specialty of surgery." Also, the court added, unlike Dr. Skudder, defendant is not a surgeon and since the ABMS "draws a distinction between those subspecialties," it found "Dr. Skudder and Dr. Bakal do not practice in the same specialty or subspecialty." The court concluded that based on the record, AOM statute and the holding in Nicholas that Dr. Skudder's AOM was non-compliant, and dismissal was appropriate.

An order memorializing the court's decision was entered dismissing plaintiff's complaint as against defendant with prejudice. Thereafter, the remaining defendants resolved the case with plaintiff. This appeal ensued.

On appeal, plaintiff asserts:

> THE TRIAL COURT'S DECISION GRANTING THE MOTION TO DISMISS THE COMPLAINT FOR ALLEGED FAILURE TO PROVIDE AN APPROPRIATE AFFIDAVIT OF MERIT PURSUANT TO N.J.S.A. 2A:53A-29 SHOULD BE REVERSED.

Plaintiff argues "as long as the challenging expert has the same [b]oard-[c]ertification as the [d]efendant [p]hysician, and that the medical treatment

involves that specialty, the fact that the [d]efendant [p]hysician has additional [c]ertifications different than the [p]laintiff's expert is of no consequence."

Plaintiff further contends:

> The issue seems to be that [defendant] is a pulmonologist as well as being a [c]ritical [c]are [s]pecialist. This means he is not a surgeon and his [c]ertification will be through the ABIM, whereby Dr. [Skudder's] is through the ABS. However, given Mr. Sovelove's clinical issues, there is no distinction in level of expertise between these certifications, as the problems pertinent to the case are those of management of bleeding and hemorrhagic shock. Critical care experience, training and certification are equally pertinent to this patient's clinical picture whether achieved through examination by the ABS or the ABIM.

Based on these arguments, plaintiff contends the AOM of Dr. Skudder satisfied the AOM Statute and the court's dismissal of plaintiff's complaint was error.

## II.

We review de novo motions to dismiss based on failures to comply with the AOM Statute, Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016), in part because they involve a legal determination, specifically "the statutory interpretation issue of whether a cause of action is [subject to] the affidavit of merit requirement," Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020), and

9

in part because they involve a dismissal of a complaint for failure to state a claim. "The submission of an appropriate affidavit of merit is considered an element of the claim." Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Thus, "[f]ailure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Ibid.; see also Cowley, 242 N.J. at 16 (noting that our Court has construed the affidavit of merit statute "to require dismissal with prejudice for noncompliance").

The AOM Statute, requires a plaintiff in any action for damages resulting from "an alleged act of malpractice or negligence by a licensed person in his profession or occupation" to provide the defendant with "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27.

The purpose of the AOM Statute is to require plaintiffs in malpractice actions to "make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early stage of litigation." Ibid. It is not concerned with whether a plaintiff can prove the allegations in the complaint, but with whether there is "some objective threshold merit to the

allegations." Hubbard v. Reed,, 168 N.J. 387, 394 (2001). Thus, it requires a plaintiff "to provide an expert opinion, given under oath, that a duty of care existed and that the defendant breached that duty." Ibid. The courts have found that the Legislature's intent in enacting the AOM Statute was not to "bar[] meritorious claims brought in good faith," or to "create a minefield of hyper-technicalities." Ferreira, 178 N.J. at 150-51. As a result, a complaint will not be dismissed with prejudice "if the plaintiff can show that he [or she] has substantially complied with the statute" or if "there are extraordinary circumstances to explain noncompliance." Id. at 151.

Initially, the AOM Statute required only that an AOM be executed by a "licensed" person who had certain "expertise in the general area or specialty involved in the action," as defined by the legislation. Ryan v. Renny, 203 N.J. 37, 51 (2010). Thus, "a physician in one field was qualified to render an opinion with respect to the performance of a physician in another if their practices overlapped." Ibid. However, in 2004, the Legislature enacted the New Jersey Medical Care Access and Responsibility and Patients First Act, N.J.S.A. 2A:53A-37 to -42, which modified the AOM Statute in all causes of action arising after July 7, 2004. Ibid. After the enactment of this statute, in any action for medical malpractice, the AOM affiant must "meet the requirements of a

person who provides expert testimony or executes an affidavit as set forth in [N.J.S.A. 2A:53A-41]."  N.J.S.A. 2A:53A-27.

N.J.S.A. 2A:53A-41 requires that a person executing an AOM be licensed as a physician or other health care professional in the United States and meet detailed criteria.  The statute provides that if the defendant against whom the AOM is offered is a "specialist or subspecialist" in an area of medicine recognized by the ABMS, and "the care or treatment involves that specialty or subspecialty," the affiant "shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty" as that defendant.  If the defendant is also "board certified" in that specialty or subspecialty, further requirements must be met.  Ibid.  In that event, the AOM's affiant must not only have specialized in the same specialty or subspecialty, but must also be:  (1) "a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action," or (2) "a specialist or subspecialist . . . who is board certified in the same specialty or subspecialty" and who has, "during the year immediately preceding the date of the occurrence that is the basis for the claim or action . . . devoted a majority of his [or her] professional time to" the "active clinical

12

practice" of that specialty or subspecialty, the "instruction of students" in that specialty or subspecialty, or both.  N.J.S.A. 2A:53A-41(a)(1) and (2).

Under N.J.S.A. 2A:53A-41(a), the first inquiry is whether a physician is a specialist or general practitioner.  Buck v. Henry, 207 N.J. 377, 391 (2011).  If a specialist, the second question is whether the allegedly deficient treatment forming the basis of the complaint "involved" that specialty.  Ibid.  If so, the "equivalency requirements" of N.J.S.A. 2A:53A-41(a) apply.  Ibid.  To ensure that a plaintiff has sufficient information to obtain an appropriate AOM, a defendant must indicate in their answer to the complaint whether they specialize in a particular area of medicine, what that specialty is, and whether their treatment of the patient in the case involved the specialty.  Id. at 396.

In Nicholas, 213 N.J. at 481-82, the Supreme Court interpreted the plain language of N.J.S.A. 2A:53A-41(a) to mean that if a defendant is a specialist, whether board certified or not, the AOM expert "must be a specialist in the same field in which the defendant physician specializes."  It found that the provision regarding hospital credentialing to perform a particular treatment or procedure, N.J.S.A. 2A:53A-41(a)(1), is not a substitute for this equivalent specialty requirement, but an additional requirement applicable where a defendant is board certified in the specialty in question.  Id. at 482.  In other words, the fact

13

that an AOM affiant is permitted by a hospital to treat the same malady, provide the same care, or perform the same procedure that is at issue in a malpractice case is irrelevant if the affiant is not a specialist in the same area as the defendant. Ibid. See also Lomando v. United States, 667 F.3d 363, 382-83 (3rd Cir. 2011) (where a defendant is a board-certified specialist, an expert offering testimony against him must share his specialty and also meet the requirements of either N.J.S.A. 2A:53A-41(a)(1) or (2)).

In Nicholas, 213 N.J. at 467-69, plaintiff was treated for carbon monoxide poisoning by two defendant physicians, one board certified in emergency medicine and the other board certified in family medicine. The complaint alleged, among other things, that the defendants failed to refer plaintiff to a facility with a hyperbaric chamber to provide him with oxygen. Id. at 470. Plaintiff filed an AOM from an expert who averred that he was board certified in "Internal Medicine, Pulmonary Diseases, Critical Care, and Undersea & Hyperbaric Medicine," and had "a clinical practice in hyperbaric medicine and critical care" that included evaluating and managing patients with acute carbon monoxide poisoning. Id. at 471-72.

The Court found that practitioners of emergency medicine, family medicine, and internal medicine may all treat carbon monoxide poisoning in the

14

course of their clinical practice.  Id. at 484.  However, it also found that these are "all distinct specialty areas recognized by the [ABMS]."  Ibid.  The Court concluded that N.J.S.A. 2A:53A-41 does not permit a physician specializing in internal medicine to serve as an AOM affiant against a physician specializing in emergency or family medicine, "even though each is qualified to treat a patient for carbon monoxide poisoning."  Ibid.  It stated that to allow this "would lead back to the days before passage of the Patients First Act when, in medical-malpractice cases, physician experts of different medical specialties, but who treated similar maladies, could offer testimony even though not equivalently credentialed to defendant physicians," and would "read out of the statute the kind-for-kind specialty requirement" the Legislature intended to impose.  Id. at 485.  Thus, although plaintiff's affiant was "unquestionably an expert in the treatment of carbon monoxide poisoning and the use of hyperbaric oxygen as a treatment modality," the Court held that he could not testify "about the standard of care exercised by" the defendants, who were practicing in different specialties.  Id. at 487-88.

In addition, N.J.S.A. 2A:53A-41(a) utilizes the ABMS to delineate each medical specialty and subspecialty to which the "equivalency requirements" apply when stating:

A-1540-23

> If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the <u>American Board of Medical Specialties</u> . . . and the care or treatment at issue involves that specialty or subspecialty recognized by the <u>American Board of Medical Specialties</u> . . . , the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the <u>American Board of Medical Specialties</u> . . . , as the party against whom or on whose behalf the testimony is offered[.] (emphasis added)

III.

After our de novo review, we conclude the trial court's finding that plaintiff's AOM was insufficient under the AOM Statute was correct and, thus, dismissal of plaintiff's complaint was appropriate. Defendant specialized in internal medicine and subspecialized in pulmonology and critical care medicine. Defendant asserted that the care and treatment she provided to plaintiff were within those subspecialties. Under the ABMS, the subspecialties of pulmonology and critical care medicine are under the specialty of internal medicine. <u>See</u> Am. Bd. of Med. Specialties, <u>ABMS Guide to Medical Specialties</u>, 12 (2025 ed.).[3] As a result, pursuant to N.J.S.A. 2A:53A-41(a), plaintiff was required to submit an AOM from an expert who also specializes in

---

[3] https:www.abms.org/wpcontent/uploads/2025/01/2025_ABMS_Guide Medical Specialties_2025-01-17.pdf. (last visited May 28, 2025).

internal medicine or subspecializes in pulmonology or critical care medicine. These were the specialties and subspecialties required to be practiced by Dr. Skudder in order for his AOM to be sufficient under the AOM Statute. Dr. Skudder was required to "be a specialist in the same field in which the [defendant] specializes." See Nicholas, 213 N.J. at 481-82, citing N.J.S.A. 2A:53A-41. We conclude the AOM of Dr. Skudder failed to meet these requirements.

Dr. Skudder's AOM was insufficient because under the ABMS he specializes in general and vascular surgery with a subspecialty in surgical critical care. ABMS Guide to Medical Specialties, at 14. In contrast, under the ABMS, defendant specializes in internal medicine with subspecialties in pulmonary disease and critical care medicine. Id., at 12. The statute's plain language states that the AOM affiant "shall have specialized . . . in the same specialty or subspecialty" as defendant. N.J.S.A. 2A:53A-41(a). Dr. Skudder neither specializes in internal medicine nor subspecializes in pulmonary disease or critical care medicine.

We conclude plaintiff's contention that Dr. Skudder satisfies the requirements of the AOM statute because of his subspecialty in surgical critical care is unpersuasive. While Dr. Skudder may be qualified to provide surgical

17

critical care, he does not meet the explicit standard set forth in N.J.S.A. 2A:53A-41(a) because, unlike defendant, he does not subspecialize in critical care medicine. We conclude as did the Court in <u>Nicholas</u>, that physician experts of different medical specialties, even if they both are qualified to treat similar maladies, are not permitted to offer testimony unless they are equivalently credentialed under the ABMS. <u>See</u> <u>Nicholas</u>, 213 N.J. at 485.

More than merely a technical insufficiency, permitting Dr. Skudder to opine against defendant would also be contrary to the Legislature's purpose in enacting the Patients First Act. The question here comes down to whether defendant breached a standard of care applicable to internists practicing critical care medicine. It would be inappropriate for Dr. Skudder, a physician specializing in general and vascular surgery with a surgical critical care subspecialty, to testify against defendant who does not hold any of these qualifications despite the close similarity of their respective critical care-based subspecialties. <u>See</u> <u>Nicholas</u>, 213 N.J. at 487-88.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1540-23