**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5165-15T2

SANDRA NICHOLAS and CORY LEO,
individually and as Administrators
Ad Prosequendum of the ESTATE OF
SANTINO MICHAEL LEO,

    Plaintiffs-Appellants,

v.

HACKENSACK UNIVERSITY MEDICAL CENTER,

    Defendant-Respondent,

and

BRUCE FRIEDMAN, M.D., MARK SIEGEL, M.D.,
STEPHEN PERCY, M.D., and ABRAHAM
ZERYKIER, M.D.,

    Defendants.

_____

Argued January 16, 2018 — Decided August 9, 2018

Before Judges Messano, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4839-12.

William L. Gold argued the cause for appellants (Bendit Weinstock, PA, attorneys; William L. Gold, on the briefs).

Richard J. Mirra argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Richard J. Mirra, of counsel and on the brief; Andrew J. Obergfell, on the brief).

PER CURIAM

Plaintiffs Sandra Nicholas and Cory Leo, individually and as administrators ad prosequendum of the estate of their four-year-old son Santino Michael Leo, appeal from orders resulting in the dismissal of their medical malpractice action against defendant Hackensack University Medical Center (HUMC). We reverse.

I.

After suffering seizures, Santino Michael Leo was admitted to HUMC on April 30, 2011. While in HUMC's pediatric intensive care unit (PICU), it was determined he had an airborne infection, methicillin-resistant staphylococcus aureus, and pneumonia. He developed acute respiratory distress, multiple organ failure and sepsis, and passed away on May 13, 2011.

In July 2012, plaintiffs filed a wrongful death and survivorship medical malpractice complaint against HUMC, the child's treating physicians, Dr. Bruce Friedman, Dr. Stephen Percy, and Dr. Mark Siegel,[1] and fictitiously-named physicians,

---

[1] Dr. Abraham Zerykier was also named as a defendant but was subsequently dismissed from the action by stipulation of the parties.

nurses and other HUMC staff. At the time of the malpractice alleged in the complaint, each of the named physicians was board certified in pediatrics and in pediatric critical care.

In support of their complaint, plaintiffs filed affidavits of merit (AOM) from Dr. Howard Eigen, and Alisha Wursten, R.N., B.S.N. In his AOM, Dr. Eigen states he is a licensed physician in the state of Indiana, "board certified and credentialed by a hospital for at least five years in the [sub]specialties of pediatric pulmonology and critical care" and, "[d]uring the year immediately preceding the date of the occurrence that is the basis of the claim or action, . . . devoted a majority of [his] professional time to the active clinical practice of pediatric pulmonology and critical care." Dr. Eigen subsequently provided three reports opining as to the alleged deviations from the standard of care by Drs. Friedman, Percy and Siegel, and other HUMC personnel,[2] and the manner in which the deviations proximately

---

[2] In Dr. Eigen's report dated June 18, 2014, he asserted the absence of a "systematic method for enforcing infection control measures" in HUMC's PICU fell "below the standard of care, and increased the risk of nosocomial infections . . . at the time that Santino [Michael] Leo was being treated." Dr. Eigen also noted that the "[l]ack of sterile procedure has a high likelihood of introducing bacteria into the blood stream at the time of the central line placement" in the child, and other lapses in procedure "greatly increased [the child's] risk of sepsis and death."

caused the child's death.  The parties waived the Ferreira[3]
conference.

Almost three years later, Dr. Eigen testified during his March 2015 deposition that he was board certified in pediatrics and in the subspecialty of pediatric critical care, and in 2011 was credentialed at the Riley Hospital for Children to practice pediatric and pediatric critical care medicine.  He also testified that from 2006 through 2011, he served as the medical director of the hospital's PICU, and was on call approximately ten weeks per year providing care to the PICU patients.  When he was not on call, Dr. Eigen administered the PICU and served as the vice-chairman of pediatrics for clinical affairs.  Dr. Eigen testified that between 2006 and 2011 he devoted twenty-five percent of his time to direct patient care in the PICU, fifty percent to administrative duties and twenty-five percent to seeing outpatients and teaching residents in the outpatient clinics.

---

[3] In Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003), the Court determined that "a 'case management conference [shall] be held within ninety days of the service of an answer in all malpractice actions' . . . [where] a 'defendant [is] required to advise the court whether he has any objections to the adequacy of the affidavit' that has been served on him."  Buck v. Henry, 207 N.J. 377, 394 (2011) (third alteration in original) (internal citation omitted) (quoting Ferreira, 178 N.J. at 154-55); see also Meehan v. Antonellis, 226 N.J. 216, 221 (2016) (reinforcing the importance of such a conference).

Drs. Friedman, Percy and Siegel moved for summary judgment, arguing plaintiffs lacked proof they deviated from the requisite standard of care because Dr. Eigen was not qualified to testify as an expert under the New Jersey Medical Care Access and Responsibility and Patients First Act, N.J.S.A. 2A:53A-37 to -42. The physicians claimed Dr. Eigen was not qualified to testify because he did not devote the majority of his professional time to clinical practice during the year preceding the alleged malpractice in 2011, and therefore did not satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2).

In its written opinion, the court noted the physicians' summary judgment motions presented the following issue: "whether [p]lainiffs' proffered expert[, Dr. Eigen,] is qualified as an expert under N.J.S.A. 2A:53A-41(a)(1) or N.J.S.A. 2A:53A-41(a)(2) as required under Nicholas v. Mynster, 213 N.J. 463 (2013)." The court determined that although Dr. Eigen is board certified in pediatrics and pediatric critical care, he did not satisfy the requirements of either N.J.S.A. 2A:53A-41(a)(2)(a) or N.J.S.A. 2A:53A-41(a)(2)(b), "which require either devotion to practice or the teaching requirement mandated for a board certified expert." The court concluded Dr. Eigen did not satisfy the statutory requirements because he "only devoted a small percentage of his

practice time to pediatric critical care in the year prior to the date of the alleged malpractice[.]"

In separate orders dated September 22, 2015, the court barred Dr. Eigen's testimony against Drs. Siegel and Friedman, and granted summary judgment in their favor, and barred Dr. Eigen's testimony against Dr. Percy. Two weeks later, the court entered an order granting Dr. Percy summary judgment.

In October 2015, plaintiffs moved for an order permitting Dr. Eigen to testify as to the standard of care and causation against HUMC. Plaintiffs argued the court's order barring Dr. Eigen's testimony as to the defendant physicians under the Patients First Act did not preclude him from testifying as an expert against HUMC.

After hearing argument, the court denied the motion in a December 11, 2015 order. In its written opinion, the court noted plaintiffs' liability claims against HUMC were premised on the hospital's alleged vicarious liability for the negligence of the defendant physicians, who the court found were "employees of" HUMC. The court reasoned that its prior disqualification of Dr. Eigen as an expert against the physicians precluded his testimony against the hospital, and found it could not "allow [p]laintiff[s] to bootstrap into evidence the excluded testimony of [the] dismissed defendant doctors['] deviation [from] the standard of

care under the circumstances." The court determined that plaintiffs could not use Dr. Eigen's testimony to support their claim HUMC is liable due to the defendant physicians' deviation from the standard of care because Dr. Eigen was not qualified to testify concerning the physicians' alleged negligence under the Patients First Act. The court concluded Dr. Eigen was not permitted to testify as to HUMC's alleged deviation from the standard of care "because it would violate the rule of N.J.S.A. 2A:53A-41(a) et. seq."

Plaintiffs filed a motion to correct the court's December 11, 2015 order to permit Dr. Eigen to offer proximate causation testimony as to HUMC.[4] In a February 11, 2016 order, the court denied the motion. In its written opinion, the court found Dr. Eigen's proximate causation testimony would be "unduly prejudicial under the circumstances of this case" because he "disavowed" offering standard of care opinions as to HUMC in his reports and deposition. In addition, the court found that permitting Dr. Eigen to testify about proximate causation would be unduly prejudicial to HUMC because the court's order barring his testimony as to the defendant physicians would necessarily preclude HUMC

---

[4] Plaintiffs intended to rely on Wursten as their expert witness on HUMC's alleged deviation from the standard of care.

from cross-examining Dr. Eigen about the physicians' alleged deviations from the standard of care.

On February 17, 2016, HUMC moved for summary judgment claiming plaintiffs lacked expert testimony establishing proximate causation. Plaintiffs cross-moved to allow late service of an expert report from Dr. Emily Dawson and substitution of Dr. Dawson for Dr. Eigen as their expert. Plaintiffs argued that late submission of the report should be permitted because they could not have anticipated what they characterized as the court's "novel" rulings barring Dr. Eigen's testimony, and because Dr. Eigen retired and was no longer available.

On June 3, 2016, the court denied plaintiffs' cross-motion, finding their need for a new expert was the result of their failure to comply with N.J.S.A. 2A:53A-41, and their request was made too late - a year and a half after the discovery end date and following seven scheduled trial dates. The court granted HUMC's summary judgment motion, finding plaintiffs lacked an expert on proximate cause that was essential to their malpractice claim. On July 8, 2016, the court denied plaintiffs' motion for reconsideration of its June 3, 2016 orders. This appeal followed.

Plaintiffs do not appeal the orders barring Dr. Eigen's testimony as to the physicians or granting the physicians' summary judgment motions. Instead, plaintiffs challenge the December 11,

8

2015 order barring Dr. Eigen from testifying as to the standard of care and proximate cause as to HUMC, the February 11, 2016 order barring Dr. Eigen from testifying as to proximate cause as to HUMC, the June 3, 2016 orders granting HUMC summary judgment and denying plaintiffs' cross-motion permitting the late filing of a new expert report, and the July 8, 2016 order denying their motion for reconsideration. In its brief on appeal, plaintiffs make clear they do "not seek reversal of any of the [o]rders as to any of the individual doctors and only seek[] to reinstate the claim against HUMC."

Plaintiffs present the following arguments for our consideration:

> POINT I
>
> THE MOTION COURT IMPROPERLY BARRED THE TESTIMONY OF PLAINTIFFS' EXPERT UNDER THE RELEVANT STATUTES WHICH ARE APPLICABLE ONLY TO PHYSICIANS, NOT TO HOSPITALS.
>
> POINT II
>
> BECAUSE DR. EIGEN WAS QUALIFIED UNDER N.J.S.A. 2A:53A-41(a)(1), BARRING HIS TESTIMONY IS REVERSIBLE ERROR.
>
> POINT III
>
> BARRING DR. EIGEN FROM TESTIFYING ON PROXIMATE CAUSE IS REVERSIBLE ERROR.

POINT IV

DISMISSAL OF PLAINTIFFS' CASE WAS TOO HARSH A REMEDY.

II.

The orders barring Dr. Eigen's testimony against HUMC and granting HUMC summary judgment are founded on the court's initial determination that Dr. Eigen was not qualified to testify against the physicians because he did not satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2)(a) or N.J.S.A. 2A:53A-41(a)(2)(b). We therefore first consider whether the court correctly determined Dr. Eigen was not qualified to testify as an expert under the Patients First Act.

"[W]e apply . . . [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 154-55 (2013) (alterations in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)). "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993).

Enacted in 2004, "[t]he [Patients First Act] establishes certain qualifications that expert witnesses in medical malpractice actions must possess." Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div.) (citation omitted), certif. denied, 228

N.J. 154 (2016). The Patients First Act "generally requir[es] the challenging expert to be equivalently-qualified to the defendant[.]" Ryan v. Renny, 203 N.J. 37, 52 (2010).

In pertinent part, the Patients First Act provides:

> In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant [N.J.S.A. 2A:53A-26 to -28][5] on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:
>
> a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties [ABMS] or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty . . . , the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, . . . , as the party against whom or on behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty . . . the expert witness shall be:

---

[5] In relevant part, N.J.S.A. 2A:53A-26 to -28 generally provides that in any action for damages for personal injury, wrongful death or property damage resulting from the negligence of certain licensed persons, including physicians in the practice of medicine or surgery, the plaintiff must file an affidavit of an appropriately licensed person that there exists a reasonable probability the defendant's conduct fell outside of acceptable professional or occupational standards.

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; <u>or</u>

(2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty, . . . during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to <u>either</u>:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist . . . , the active clinical practice of that specialty or subspecialty . . . ; <u>or</u>

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist . . . accredited residency or clinical research program in the same specialty or subspecialty . . . ; <u>or</u>

(c) both.

[N.J.S.A. 2A:53A-41(a) (emphasis added).]

In <u>Nicholas</u>, our Supreme Court explained N.J.S.A. 2A:53A-41(a)'s requirements where, as here, a plaintiff proffers an expert who is board certified in a specialty and a subspecialty to testify about the care or treatment rendered by another physician in the

same specialty and subspecialty.[6]  213 N.J. at 479-88.  The Court first noted that where "a physician is a specialist and the basis of the malpractice action 'involves' the physician's specialty, the challenging expert must practice in the same specialty." Id. at 481-82; accord Castello, 446 N.J. Super. at 16.  A plaintiff's expert "must be a specialist in the same field in which the defendant physician specializes . . . ." Nicholas, 213 N.J. at 482; see N.J.S.A. 2A:53A-41(a); see also Meehan, 226 N.J. at 233 (explaining N.J.S.A. 2A:53A-41(a) requires that a "proposed expert . . . must have specialized in the same specialty or subspecialty" as the defendant physician).

N.J.S.A. 2A:53A-41(a) imposes additional expert qualifications where a defendant physician practices in an ABMS specialty and is also board certified in the specialty. Nicholas, 213 N.J. at 482.  The Court explained that "if the defendant-physician specializes in a practice area 'and . . . is board certified and the care or treatment at issue involves that board

---

[6]  Where the treatment at issue is not provided by a specialist, or is provided by a specialist but does not involve the physician's specialty, the requirements for the qualification of an expert to testify against a general practitioner apply. Buck, 207 N.J. at 391; see also N.J.S.A. 2A:53A-41(b).  The standard has no application here because the defendant physicians were specialists in pediatrics and subspecialists in pediatric critical care and their alleged malpractice involved that specialty and subspecialty.

specialty . . . , the expert witness' then must" satisfy the requirements of "either" N.J.S.A. 2A:53A-41(a)(1) "or" N.J.S.A. 2A:53A-41(a)(2). Ibid. (citation omitted); see also Castello, 446 N.J. Super. at 15 (noting that where the defendant physician is board certified in the specialty involved in the alleged malpractice, the challenging expert must satisfy the requirements of N.J.S.A. 2A:53A-41(a), and "the additional qualifications set forth in subsections (a)(1) or (a)(2)"); Lomando v. United States, 667 F.3d 363, 383 (3d Cir. 2011) (finding N.J.S.A. 2A:53A-41(a) requires that an expert offering testimony against a board-certified specialist share that specialty and meet the requirements of either N.J.S.A. 2A:53A-41(a)(1) or (a)(2)).

To satisfy N.J.S.A. 2A:53A-41(a)(1)'s requirements, the expert must be "credentialed by a hospital to treat the condition at issue . . . ." Nicholas, 213 N.J. at 482. To satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2), the expert must be "board certified in the same specialty in the year preceding 'the occurrence that is the basis for the claim or action,'" ibid. (quoting N.J.S.A. 2A:53A-41(a)(2)), and during the year immediately preceding the occurrence he or she must have devoted a majority of his or her time to "either" clinical practice as defined in N.J.S.A. 2A:53A-41(a)(2)(a) or the instruction of students as defined in N.J.S.A. 2A:53A-41(a)(2)(b), ibid.

Measured against the statutory standards as explained by the Court in Nicholas, we are convinced the court erred by determining Dr. Eigen was not qualified to testify against the defendant physicians. In the first instance, Dr. Eigen met the requirements of N.J.S.A. 2A:53A-41(a). He was a licensed physician and, at the time of the alleged malpractice, "specialized . . . in the same specialty, [pediatrics, and] subspecialty [pediatric critical care,]" involved in the treatment and care at issue. See N.J.S.A. 2A:53A-41(a). Although Dr. Eigen's administrative duties as director of the PICU and as a hospital administrator consumed a substantial amount of his professional time in 2011, his clinical practice was devoted exclusively to the practice of pediatrics and pediatric critical care. See Buck, 207 N.J. at 391 (finding "[a] physician may practice in more than one specialty").

N.J.S.A. 2A:53A-41(a) does not require that a proposed expert devote a majority of his or her professional time to the practice of the pertinent specialty. It requires only a showing that a proposed expert "practice in the same specialty" as a defendant physician. Nicholas, 213 N.J. at 486. In Nicholas, the Court determined the plaintiff's proposed expert did not satisfy N.J.S.A. 2A:53A-41(a)'s requirements because although credentialed at a hospital and board certified in the pertinent specialties, the expert "did not specialize" in those specialties when the

15

alleged malpractice occurred. <u>Id.</u> at 487. Similarly, in <u>Castello</u>, 446 N.J. Super. at 16-17, we determined that a proposed expert did not satisfy "the preliminary qualification of specialization" under N.J.S.A. 2A:53A-41(a) because he retired from the practice of medicine prior to the time of the alleged malpractice occurrence.

In contrast, here the evidence shows Dr. Eigen practiced pediatrics and pediatric critical care in 2011 when the defendant physicians provided the care at issue. Although he had duties independent of his clinical practice, he devoted all of his clinical practice to pediatrics and pediatric critical care in 2011. Thus, Dr. Eigen satisfied N.J.S.A. 2A:53A-41(a)'s requirement that he practice and specialize in the specialty and subspecialty of the defendant physicians.

The defendant physicians were board certified in pediatrics and pediatric critical care, and therefore Dr. Eigen was required to satisfy the additional requirements of either N.J.S.A. 2A:53A-41(a)(1) or (a)(2) to qualify as an expert witness under the Patients First Act. <u>Nicholas</u>, 213 N.J. at 482; <u>Castello</u>, 446 N.J. Super. at 15-16. The court found Dr. Eigen was not qualified because he did not devote the majority of his professional time to the active clinical practice of pediatrics and pediatric critical care during the year immediately preceding the alleged

A-5165-15T2

malpractice. In other words, the court found Dr. Eigen was not a qualified expert because he failed to satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2)(a).

To be sure, Dr. Eigen's qualifications did not satisfy the requirements of N.J.S.A. 2A:53A-41(a)(2)(a). The court erred, however, because it did not consider that Dr. Eigen satisfied the requirements of N.J.S.A. 2A:53A-41(a)(1). When the alleged malpractice occurred in 2011, Dr. Eigen was credentialed at the Riley Hospital for Children to provide pediatric and pediatric critical care, and thus "to treat patients for the medical condition, or to perform the procedure, that is the basis for" plaintiffs' medical malpractice claim. See N.J.S.A. 2A:53A-41(a)(1). Dr. Eigen satisfied the requirements of N.J.S.A. 2A:53A-41(a)(1), and his lack of qualifications under N.J.S.A. 2A:53A-41(a)(2) did not permit or require his disqualification as an expert witness against the defendant physicians. Nicholas, 213 N.J. at 412; Castello, 446 N.J. Super. at 15-16. The court erred in holding otherwise and in barring Dr. Eigen's testimony as to the defendant physicians.

The court's orders granting HUMC summary judgment and denying plaintiffs' request to serve a late expert report were founded on its determination Dr. Eigen was not a qualified expert under the Patients First Act in the first instance. Because we conclude the

determination was in error, we are constrained to reverse the court's order granting summary judgment to HUMC and denying plaintiffs' request to serve a late expert report.

We are not persuaded by HUMC's contention that even if Dr. Eigen was qualified to testify under the Patients First Act, the court properly barred his testimony as to proximate causation and granted HUMC summary judgment because Dr. Eigen disavowed providing a proximate causation opinion as to HUMC in his deposition. The record does not support HUMC's contention.

During his deposition, Dr. Eigen was asked directly if his reports included an opinion that HUMC "and its nurses or personnel departed from the applicable standard of care of a hospital." He incorrectly stated his reports did not include such an opinion,[7] and agreed, subject to a caveat,[8] that he did not express an opinion concerning HUMC's deviation from the standard of care.

_____

[7] Dr. Eigen's June 18, 2014 report included an opinion HUMC deviated from the standard of care that was not dependent on the actions of the defendant physicians. See footnote 2, supra.

[8] The caveat was that he did not offer an opinion as to HUMC's deviation from the standard of care but only if the defendant physicians were not HUMC employees. In other words, Dr. Eigen made clear that if the physicians were HUMC employees, his opinion was that HUMC was liable for their deviation from the standard of care detailed in his reports and otherwise in his testimony. The record is unclear whether the defendant physicians were HUMC employees. In its brief, HUMC states it is undisputed the physicians were not HUMC employees, but fails to cite to any

Dr. Eigen was not similarly asked if he had an opinion on proximate causation, and our review of the portion of the transcript from his deposition provided by HUMC makes clear he never disavowed offering an opinion on proximate cause. HUMC's contention Dr. Eigen was properly barred as an expert witness because he disavowed offering an opinion on proximate causation as to HUMC is unavailing.

It is unnecessary to address plaintiffs' arguments that the court's orders should be reversed for reasons other than its erroneous conclusion Dr. Eigen was not a qualified expert under the Patients First Act. Because the court's order granting HUMC summary judgment was founded on the incorrect conclusions that Dr. Eigen was not a qualified expert witness and he disavowed offering an opinion as to proximate cause, we reverse the summary judgment order and remand for further proceedings. Our determination renders it unnecessary to address plaintiffs' contention the court

evidence in the record supporting the assertion. See R. 2:6-2; see also State v. Mauti, 448 N.J. Super. 275, 314 n.17 (App. Div.) (noting it is the parties' responsibility to refer to specific parts of the record to support their arguments on appeal), certif. denied, 230 N.J. 170 (2017). In the trial court's written opinion supporting its December 11, 2015 order denying plaintiffs' motion to permit Dr. Eigen to testify against HUMC, the court expressly found the defendant physicians were HUMC employees. It is unnecessary to resolve this factual dispute, however, because we have determined the court erred by finding Dr. Eigen was not a qualified expert under the Patients First Act.

erred by denying their motions to serve the late expert report of Dr. Dawson and for reconsideration.

Dr. Eigen has retired and is no longer available to provide expert testimony. On remand, the court shall allow plaintiffs to serve Dr. Dawson's report as plaintiffs' new expert report, and permit such other discovery as the court deems necessary under the circumstances.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20