**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2577-22
     A-3261-22

BONNIE MARIE COTTRELL,
and CHRISTOPHER DANIEL
LETRENT, Co-Executors
of the Estate of MARYANN
COTTRELL, deceased,

  Plaintiffs-Respondents,

v.

NATHAN HOLTZBERG, M.D.,
and ORTHOPAEDIC INSTITUTE
OF CENTRAL JERSEY, P.A.,

  Defendants-Appellants,

and

KIMBALL MEDICAL CENTER,
INC., MONMOUTH MEDICAL
CENTER SOUTHERN CAMPUS
FOUNDATION, INC., BARRY
GORDON, M.D., OCEAN COUNTY
INTERNAL MEDICINE ASSOCIATES,
P.C., BHARAT PATEL, M.D., ALEX
LANGMAN, M.D., MEDICAL
RADIOLOGY GROUP, P.A.,
BRUCE MONASTERSKY, M.D.,

NEUROLOGICAL ASSOCIATES
OF OCEAN COUNTY, P.A.,
FOUNTAIN VIEW CARE CENTER,
SHORE HEALTH CARE CENTER,
INC., SATUYENDRA SINGH, M.D.,
NORTH ATLANTIC MEDICAL
ASSOCIATES, ST. BARNABAS
MEDICAL CENTER, ST. BARNABAS
CORPORATION, BARNABAS
HEALTH, INC., HARHPAL SINGH,
M.D., NORTH JERSEY BRAIN &
SPINE CENTER, SAIKIRAN MURTHY,
D.O., OTAKAR HUBSCHMANN, M.D.,
1351 OLD FREEHOLD ROAD
OPERATIONS, LLC d/b/a BEY LEA
VILLAGE CARE CENTER; SOMC
MEDICAL GROUP, P.C., d/b/a
OCEAN COUNTY FAMILY CARE;
COMPLETE CARE AT BEY LEA
LLC; SUSAN BELTRAN, R.N.; and
ELIZABETH NOLLER, R.N.,

      Defendants-Respondents,

and

RAHUL PAWAR, M.D.,
ALEXANDER B. KING, M.D.,
ROY J. FERTAKOS, M.D., and
IMAGING CONSULTANTS OF
ESSEX, P.A.,

      Defendants.
_____

BONNIE MARIE COTTRELL,
and CHRISTOPHER DANIEL
LETRENT, Co-Executors

2

of the Estate of MARYANN
COTTRELL, deceased,

Plaintiffs-Respondents,

v.

NATHAN HOLTZBERG, M.D.,
ORTHOPAEDIC INSTITUTE OF
CENTRAL JERSEY, P.A.,
KIMBALL MEDICAL CENTER,
INC., BHARAT PATEL, M.D.,
ALEX LANGMAN, M.D., MEDICAL
RADIOLOGY GROUP, P.A.,
BRUCE MONASTERSKY, M.D.,
NEUROLOGICAL ASSOCIATES
OF OCEAN COUNTY, P.A.,
FOUNTAIN VIEW CARE CENTER,
SHORE HEALTH CARE CENTER,
INC., SATUYENDRA SINGH, M.D.,
HARSHPAL SINGH, M.D.,
NORTH JERSEY BRAIN & SPINE
CENTER, and OTAKAR
HUBSCHMANN, M.D.,

Defendants-Respondents,

and

BARRY GORDON, M.D., and
OCEAN COUNTY INTERNAL
MEDICINE ASSOCIATES, P.C.,

Defendants-Appellants,

and

MONMOUTH MEDICAL

CENTER SOUTHERN CAMPUS
FOUNDATION, INC., NORTH
ATLANTIC MEDICAL ASSOCIATES,
ST. BARNABAS MEDICAL CENTER,
ST. BARNABAS CORPORATION,
BARNABAS HEALTH, INC., RAHUL
PAWAR, M.D., ALEXANDER B.
KING, M.D., ROY J. FERTAKOS,
M.D., IMAGING CONSULTANTS
OF ESSEX, P.A., SAIKIRAN
MURTHY, D.O., ELIZABETH
NOLLER, R.N.; and SUSAN
BELTRAN, R.N. [1],

     Defendants.

_____

Submitted January 23, 2024 – Decided July 1, 2024

Before Judges Sumners and Smith.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5557-16.

Buckley Theroux Kline & Cooley, LLC, attorneys for appellants in A-2577-22 (Tess Jennifer Kline and Michael Paul Opacki, on the briefs).

Schenck, Price, Smith & King, LLP, attorneys for appellants in A-3261-22 (William Buckley and Evan B. Magnone, on the briefs).

Messa & Associates, PC, attorneys for respondents Bonnie Marie Cottrell and Christopher Daniel LeTrent

---

[1] Improperly pled as Susan Beltra, R.N.

in A-2577-22 (Irene M. McLafferty and Alaina A. Gregorio, on the brief).

Messa & Associates, PC, attorneys for respondents Bonnie Marie Cottrell and Christopher Daniel LeTrent in A-3261-22 (Irene M. McLafferty and Alaina A. Gregorio, on the brief).

PER CURIAM

On leave granted in these back-to-back appeals, we consider whether the motion court correctly applied the same-specialty requirement of the New Jersey Medical Care Access and Responsibility and Patients First Act (PFA), N.J.S.A. 2A:53A-37 to -42. Plaintiffs Bonnie Marie Cottrell (Bonnie)[2] and Christopher Daniel LeTrent, Co-Executors of the Estate of Maryann Cottrell (Cottrell), deceased, allege defendants Nathan Holtzberg, M.D., a pain management specialist, and Orthopaedic Institute of Central Jersey, P.A. (collectively Dr. Holtzberg) violated the standard of care in reviewing Cottrell's magnetic resonance imaging (MRI) scans which led to a failure to diagnose her medical condition. Plaintiffs allege that Barry Gordon, M.D., an internist, and Ocean County Internal Medicine Associates, P.C. (collectively Dr. Gordon), violated the standard of care in reviewing Cottrell's MRI scans which led to a failure to

---

[2] We refer to Bonnie Marie Cottrell by her first name to avoid confusion because she has the same last name as the deceased. We mean no disrespect.

diagnose her medical condition and prematurely release her from the hospital without diagnosing the cause of her severe pain. In support of their claims against both doctors, plaintiffs rely upon the expert opinion of Terrance Baker, M.D, who specializes in family and emergency medicine.

In Docket No. A-2577-22, the court denied Dr. Holtzberg's request to bar Dr. Baker's opinion that Dr. Holtzberg was negligent. We affirm because we agree with the court's finding the PFA's same-specialty requirement did not apply to Dr. Baker's opinion of Dr. Holtzberg because the opinion was not tethered to Dr. Holtzberg's standard of care as a pain medicine specialist but generally as a medical doctor.

In Docket No. A-3261-22, the court denied Dr. Gordon's request to bar Dr. Baker's opinion that Dr. Gordon was negligent. We reverse because under the PFA, Dr. Baker is not a board-certified internist, and he cannot opine that Dr. Gordon deviated from the standard of care of an internist.

I.

The motion record provides the following relevant allegations, facts, and procedural history.

<u>Cottrell's Medical Treatment and Death</u>

On August 30, 2014, an emergency room physician admitted Cottrell into Kimball Medical Center due to her "acute bilateral leg pain" whenever she moved her legs.  Two days later, Dr. Gordon, a board-certified internist with extensive practice experience in internal and emergency medicine, examined Cottrell for a possible fungal infection but found none.  Cottrell was diagnosed with rhabdomyolysis, a muscle injury that released chemicals into her bloodstream.

An MRI of Cottrell's lumbar spine was taken on September 2.  Dr. Holtzberg, Cottrell's longtime pain management doctor who completed an anesthesiology residency and pain management fellowship, reviewed the MRI scans, as did other doctors.  Dr. Holtzberg found the scans showed "significant artifact" but "no obvious abnormal masses or lesions" on Cottrell's spine.  In examining Cottrell, he "noted difficulty in testing her motor strength due to significant pain with movement."  Despite "acknowledg[ing] the motion artifact existing on the [poor-quality] MRI," he concluded the MRI results were inconsistent with Cottrell's previous symptoms and "recommended additional pain medication and acute rehabilitation."  After Cottrell was hospitalized for six days, Dr. Gordon discharged her to a rehabilitation center.

A-2577-22

Over the next four years, Cottrell's suffered numerous medical complications resulting in frequent hospital and nursing home stays. She died on November 8, 2018.

Cottrell's Lawsuit

In September 2016, prior to her passing, Cottrell filed a medical malpractice complaint raising negligence and corporate negligence claims against Drs. Holtzberg and Gordon as well as several other healthcare providers not involved in this appeal. After Cottrell's passing, her children Bonnie and LeTrent filed an amended complaint, suing as the co-executors of her estate. Cottrell v. Holtzberg, 468 N.J. Super. 59, 66 (App. Div. 2021).

As to the doctors, it is essentially alleged that they breached their respective duties of care by not taking the appropriate action upon viewing Cottrell's inadequate MRI scans leading to misdiagnosis of her medical condition contributing to paralysis and other medical conditions. Dr. Baker, board certified in family practice, emergency medicine, and forensic medicine, rendered expert reports asserting Cottrell's healthcare providers negligently cared for her at the rehabilitation center she entered after her August-September 2014 emergency room visit and hospitalization without mentioning Drs. Holtzberg and Gordon. At his deposition, Dr. Baker opined Cottrell's

debilitating leg pain was a "true medical emergency." He stated the MRI of her lumbar spine was "limited due to motion artifacts," making it "an unusable study," and "[t]he standard of care required . . . a specific focus [CAT scan], or myelogram be performed." Without rescanning Cottrell's spine, according to Dr. Baker, her physicians could not have properly determined if there was "a structural basis of the spine . . . explain[ing] [her] . . . disproportionate pain symptoms associated with changes in motor function and sensation of both lower legs." Dr. Baker did not specifically identify Dr. Holtzberg, but he stated Dr. Gordon discharged Cottrell to the rehabilitation center from the hospital without a conclusive diagnosis of the severe back pain preventing her from walking.

Drs. Holtzberg and Gordon filed separate motions to bar Dr. Baker from offering standard of care opinions.[3] Dr. Holtzberg argued the PFA barred Dr. Baker's opinion regarding his care of Cottrell because Dr. Baker, a family and emergency medicine physician, and Dr. Holtzberg, a pain medicine specialist, did not share specialties. Dr. Gordon also argued Baker did not share specialties with him, an internist, and, moreover, his role during Cottrell's 2014

---

[3] Other defendants filed similar motions, but we do not discuss them as they are not relevant to these appeals.

hospitalization "was [as] the attendant for [her], after she was admitted to the hospital" and as the doctor who signed off on her discharge from the hospital. The court, without citing any law, rejected these contentions and entered orders denying the motions for reasons explained in a single oral decision. The court found that Baker's lack of similar specialty with Drs. Holtzberg and Gordon was insignificant, reasoning "[i]f you have an MRI that's unclear, you should have another MRI done. So you have a clear MRI. . . . [I]t's common sense" and "[e]very doctor[ is] taught that in medical school," like learning when "you have to take somebody's blood pressure again."

## II.

"To prove medical malpractice . . . 'a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" Haviland v. Lourdes Med. Ctr. of Burlington Cty., Inc., 250 N.J. 368, 384 (2022) (quoting Nicholas v. Mynster, 213 N.J. 463, 478 (2013)). The PFA sets forth the required qualifications for a medical-malpractice plaintiff's testifying expert. For cases involving a defendant doctor who practiced and rendered treatment within a recognized specialty, N.J.S.A. 2A:53A-41(a) provides:

A-2577-22

> If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties [(ABMS)] or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the [ABMS] or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty . . . as the party against whom or on whose behalf the testimony is offered . . . .

In the seminal case of Nicholas v. Mynster, our high court found "[t]he apparent objective of N.J.S.A. 2A:53A-41 is to ensure that, when a defendant physician is subject to a medical-malpractice action for treating a patient's condition falling within his ABMS specialty, a challenging plaintiff's expert, who is expounding on the standard of care, must practice in the same specialty." 213 N.J. at 486. Thus, under N.J.S.A. 2A:53A-41(a), "[w]hen a physician is a specialist and the basis of the malpractice action 'involves' the physician's specialty, the challenging expert must practice in the same specialty," id. at 481-82, and a plaintiff "cannot establish the standard of care through an expert who does not practice in the same medical specialties as defendant physicians," id. at

11

468.[4] Nevertheless, the standard of medical care only involves a physician's specialty when the physician "rendered treatment within" the specialty. Id. at 487. Thus, "[w]here the treatment at issue . . . is provided by a specialist but does not involve the physician's specialty, the requirements for the qualification of an expert to testify against a general practitioner," not the same-specialty requirement, apply. Nicholas v. Hackensack Univ. Med. Ctr., 456 N.J. Super. 110, 119 n.6 (App. Div. 2018).

## III.

Dr. Holtzberg argues the care he provided to Cottrell solely concerned his pain medicine specialty, which is not Dr. Baker's specialty. He posits an MRI scan "of poor quality to one physician may be perfectly acceptable to another." As a pain medicine specialist, he asserts he interpreted Cottrell's MRI scans differently from a physician with different credentials, as "[e]very specialty reads imaging differently" based on "what the specific physician is looking for" in the scans. He contends Dr. Baker lacks the qualifications to know "how a [p]ain [m]anagement physician would review" MRI scans or what a pain medicine specialist would have looked for in them.

---

[4] The Court determined "there are no exceptions to that requirement other than the waiver provision of N.J.S.A. 2A:53A-41(c)." Nicholas, 213 N.J. at 482.

Based on our de novo review of the court's order denying Dr. Holtzberg's motion to bar Dr. Baker's testimony under the PFA, we are unpersuaded by Dr. Holtzberg's arguments. See Pfannenstein v. Surrey, 475 N.J. Super. 83, 95 (App. Div.) (holding we review de novo a trial court decision regarding "compliance with the same-specialty requirement of the PFA"), certif. denied, 254 N.J. 517 (2023). The PFA same-specialty requirement did not apply to Dr. Holtzberg's care of Cottrell when he failed to order new MRI scans. Dr. Holtzberg offers no support for his "bare conclusory assertion[]" that as a pain medicine specialist, he views scans differently from other physicians. See Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999). Dr. Baker did not opine that based on a pain medicine specialist's standard of care, Dr. Holtzberg misinterpreted Cottrell's MRI scans or overlooked clues that a more thorough review of the scans would have revealed. He merely stated Dr. Holtzberg, like the other physicians who noticed the artifact in her scans, should have ordered a new MRI, or a CAT scan or myelogram be performed, instead of relying upon the inadequate MRI scans. In Dr. Baker's opinion, Dr. Holtzberg needed nothing more than standard medical training to know whether the scans were clear enough to properly diagnose Cottrell's complaints of pain. Assessing image clarity does not "go[] to the heart of" pain medicine. The pain medicine

13

specialty focuses on "diagnos[ing] and treat[ing] patients experiencing problems with acute or chronic pain . . . and coordinat[ing] care needs with other specialists." American Board of Anesthesiology, Am. Bd. of Med. Specialties, https://www.abms.org/board/american-board-of-anesthesiology/#aba-pm (last visited June 19, 2024). Because Dr. Holtzberg's failure to order new scans did not fall within his specialty, the PFA's same-specialty requirement is inapplicable to Dr. Baker's evaluation of Dr. Holtzberg. Cf. Nicholas, 213 N.J. at 487. Accordingly, we affirm the court's order denying Dr. Holtzberg's motion to bar Dr. Baker's expert opinion that Dr. Holtzberg was negligent in caring for Cottrell during her emergency room visit and hospitalization in September 2014.

IV.

Dr. Gordon argues Dr. Baker cannot offer standard of care testimony against him because Dr. Baker does not share his board certification of internal medicine. He cites Nicholas for its principle that the same-specialty requirement bars a doctor board-certified in internal medicine from testifying against doctors who are board-certified in emergency medicine or family medicine, even though physicians trained in any of those areas may have sufficient training to treat the plaintiff. 213 N.J. at 487-88. Dr. Gordon adds that Dr. Baker's deposition testimony addressed the standard of care Dr. Gordon should have exercised both

14

during Cottrell's hospital stay, including but not limited to Cottrell's MRI, and when he discharged her from the hospital. Even though Dr. Baker did not name Dr. Gordon when describing the conduct of the physicians who treated Cottrell in the hospital, he opined Cottrell should not have been discharged to the rehabilitation center before the physicians identified the cause of her leg pain.

Viewing Dr. Gordon's arguments through the same lens that we considered Dr. Holtzman's arguments, we conclude the motion court should not have denied Dr Gordon's motion to bar Dr. Baker's expert opinion. Unlike with Dr. Holtzberg, the record is not clear if Dr. Gordon ever saw, much less analyzed, Cottrell's MRI scans. Hence, there is no basis for plaintiffs to claim Dr. Gordon should have ordered further testing due to the inadequate MRI scans. Dr. Gordon's interactions with Cottrell appear to have all occurred either before or after the MRI was ordered. He examined Cottrell shortly after she was first admitted and signed off on her discharge to the rehabilitation center. Relevantly, plaintiffs contend Dr. Gordon: (1) observed "Cottrell would scream with pain at attempts to minimally lift her legs or bend her knees" but did not do enough to quickly find out why; and (2) discharged her before anyone determined the source of Cottrell's leg pain.

Dr. Gordon's interactions with Cottrell fall squarely within the broad scope of internal medicine. Internal medicine "incorporates an understanding of disease prevention, wellness, substance abuse, mental health and effective treatment of common problems" involving many body parts, with an aim to "provide[] long-term, comprehensive care[,] . . . managing both common and complex illnesses of adolescents, adults and the elderly." American Board of Internal Medicine, Am. Bd. of Med. Specialties, https://www.abms.org/board/american-board-of-internal-medicine/#abim-im (last visited June 20, 2024). Dr. Gordon was in the same position as the second doctor in Nicholas, providing follow-up care to a patient with emergent symptoms once the patient was admitted into the hospital. 231 N.J. at 470, 487. He persuasively argues plaintiffs can only obtain standard of care testimony against him from another board-certified internist. See Pfannenstein, 475 N.J. Super. at 102-03. Because Dr. Baker is not a board-certified internist, he cannot opine that Dr. Holtzberg deviated from the standard of care of an internist. N.J.S.A. 2A:53A-41(a).

Before the motion court, plaintiffs briefly alluded to the fact that Drs. Baker and Gordon share an emergency medicine specialty. Under the PFA's plain language, Dr. Baker could provide standard of care opinions against Dr.

Gordon if Dr. Gordon was acting as an emergency medicine physician rather than an internist. See DiProspero v. Penn, 183 N.J. 477, 492 (2005). However, given neither party briefed this issue on appeal, it is waived, and plaintiffs cannot in the future seek to offer Dr. Baker's testimony against Dr. Gordon on this basis. See N.J. Dep't of Env't Prot. v. Alloway Township, 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (noting "[a]n issue that is not briefed is deemed waived").

Accordingly, we reverse the court's order denying Dr. Gordon's motion to bar Dr. Baker's expert opinion that Dr. Gordon was negligent in caring for Cottrell during her emergency room visit and hospitalization in August-September 2014.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

17